Good morning. My name is David Gerard. I represent the appellant C. R. in this matter. I'm going to save four minutes for rebuttal. The issue before the court today is what process is due to a public school student in the state of Washington when they are emergency expelled and long-term suspended. And one of the unusual things about this case is that the state of Washington has an unusual legal scheme that governs this area very specifically and in very mandatory terms. The scheme is different and has different standards, due process standards, than the usual federal 14th Amendment scheme that would be applied to due process in school discipline cases as enunciated in Gossip v. Lopez and its progeny. So it would seem then, Counselor, that there is a constitutionally protected property interest in attending school. I think that's kind of something we generally understand. It seems to me that the big issue in this case is, is there a constitutionally protected property interest in having those procedures which were set forth in Washington law and regulation. Do you agree? I agree that that is an issue in the case under the wedges and ledges analysis. I also, I'm not sure the court even needs to reach the wedges and ledges analysis. I think the court and the district court should have simply ruled on what Washington has set forth in very explicit terms, the due process rights for students in these discipline cases. Well, I had the privilege of sitting on a case similar to this once before and we came to this particular issue and it was a totally different case than this particular issue. I guess I'm trying to figure out from the record, the record as I understand it, nobody below really ever requested the opportunity to confront witnesses, did they? No. And nobody ever really requested? Is that no, they didn't or no, they did not? No, they did not. Yeah, that's what I thought. And nobody ever requested any or even fought about the credibility of the witnesses? The only witness who appeared was a school administrator, none of the students. Well, that was at the upper hearing, but I mean in the lower hearing, nobody even questioned the credibility of the witnesses. I believe the father, who's not an attorney, actually did complain about the witnesses, whether the identification was proper, whether the student was intoxicated, whether the student was credible, whether the student had been coerced into giving a statement. So that was brought up numerous times. And I would like to add just briefly on this specific issue, as I think you're referring to the TT versus Bellevue School District, on remand, Judge sent back the question of, we need to find out whether the student asked the witnesses to be present at the due process hearing. What we sent back was to find out really whether these procedures were any constitutional protection at all, because in that particular case, there were two witnesses, which was all hearsay. Nobody ever got a chance to even, I mean, they challenged the credibility of the witnesses. They were all hearsay, and the, if you will, their language of their testimony may have made a difference. So we said, we don't think there's any constitutional protected interest here, but we're going to let the district court go through and think about it and decide that, and we never got it back. Well, so what I tried to do in this case is I tried to compare the two. It didn't seem to me that anybody, only thing that the father has ever contested, and therefore I guess the child, is the length. They didn't contest the evidence. They didn't contest what happened at the hearing. They just said that somehow that was longer than it was needed. They didn't even challenge the fact that it was 10 days, just when it went to 11 days, there was a problem. And they continued, well, it was more than 11 months. Now it's back to 11. So I guess I'm trying to figure out whether really this is the same kind of case as T.T. It's very much the same kind of case. Here, and I respectfully disagree with your analysis of the facts in T.T. and here, here the father did make those kinds of arguments. The father Maybe you could show me in the record where that is. Well it's throughout both hearings and I mean I realize that there was a, there's a, if you will, a statement by a principal at the appellate hearing which, whether it was taken into consideration or not is some question, but I really got no idea in the underlying hearings that there was any challenge of the testimony that was presented in writing. There was and it's addressed in the briefs and I don't have the exact citations for you, but I can provide them. The only difference between the parent's role in this case versus T.T. was the parent in T.T. actually said where are the witnesses? Why aren't the witnesses there? The parent in T.T. was a paralegal, knew enough to read the regulations before the hearing to ask that. When this case was remanded to the district court, Judge Jones said the burden of proof was on How was T.T.? Yeah, and T.T. the parent asked. When it was remanded, Judge Jones, following your guidance in the mandate in T.T. said address that factual determination that you asked the district court to make which was did the parent ask. Judge Jones concluded that it's a matter of almost absolute right to question and confront the witnesses against him and the parent had no obligation whatsoever to ask that the witnesses be present. The parent had no obligation to tell the school district how to prosecute their case against the child. The school district had the burden and to present Bottom line, I can read what Judge Jones said. My problem is that I don't see the same kind of facts in this case. The facts in this case are totally different than the facts I read in T.T. and knew about in T.T. How do you compare them? I don't even see them similar. Well, here, the parent alone, the students did not participate in either, in both cases, the parent I understand. Okay. In both But the parent in this case merely questioned the length, if you will, of the discipline. Not what happened to do the discipline, not what the situation was for the discipline, merely the length of the discipline. I would have to disagree with all due respect. A complete reading of the record will show that the parent contested virtually everything about the discipline that was imposed on the student. If I can just finish about the But the objective on the ground is this was a long tradition and everybody had been paddling for a long time and it's a good old tradition. We ought to keep it and not expel students because of it, isn't it? Wasn't that his story? That was one of the arguments they made. And as a lay person with no legal training or school training, making that argument was not a great idea. I'd be the first to admit I was not involved in the case. This is a lay parent going in. But I really think it's important because there seems to be a misunderstanding between what T.T. was and what this case is. In T.T. and in this case, the parent was given written statements with the names redacted from anonymous students and in T.T. employees at an off-campus dentist office. They were never identified by the school district. The school district never explained in both cases why they did not present the witnesses. In both cases, the school district did not explain why, if there was any fear of retaliation on the part of the student who was involved. And in both cases, the only witness was the school district administrator. You will agree, will you not, that in general, the procedures that are appropriate in these proceedings are not constitutionally mandated. That we apply these on a case-by-case basis. And in general, we have a lot of cases which say they're not constitutional at all. I would not agree. And here's why. The Washington Constitution gives a paramount duty and a paramount right of students to attend public school. Washington, when it adopted its Constitution in 1889, was very specific about that. Then the Board of Education in 1977 issued these regulations. Only these regulations in WAC 392-400 govern student disciplinary proceedings in the state of Washington. And they set forth the minimum due process standards under the state and federal Constitution. Washington is unique in having defined those regulations. So our argument is that these regulations are the state of Washington's statement of due process that students get in student disciplinary proceedings. We do not agree. There's certainly a federal standard that may be applied in states under Goss v. Lopez that don't have this kind of specific statutory, constitutional, or regulatory right where you're looking at a property interest in the due process calculus that's based on a truancy statute, a statute that requires mandatory attendance. That's what Goss is based on. That's what Stone was based on. Here, the right in Washington is the paramount duty under the state Constitution. It is the first prong in the Matthews v. Eldridge test is what is the nature of the private interest at stake. That is the most important prong. You get a lot less due process when you're losing your fishing license than when you're facing the death penalty. It is the property interest that drives how much process is due. And the state of Washington, taking the Reserve Clause of the 10th Amendment very seriously, did this under state Constitution and then said here are the regulations that govern. This is the law in the state of Washington. Mr. Counsel, you've gone past your time. We'll give you another minute, but I want to be able to answer this question. Did you bring this action under Section 1983? That was one of the causes that was brought. It was brought in state. That is only for federal constitutional rights, correct? Correct. All right. Thank you. We brought both. We'll give you a one-minute rebuttal. Okay. Thank you. Good morning, Your Honors. Charles Lind on behalf of the Seattle School District or Seattle Public Schools this morning. Let me just build off the arguments that were being made. Seattle School District's position is exactly what was being asked by the court, i.e., that there is not a constitutionally protected property interest in the strict adherence to the procedures themselves. No federal constitutional. That is correct. And I would argue that there's no authority that there's a state constitutionally protected interest either. Counsel hasn't made any argument as to why there would be a state protected constitutional interest or state law constitutional interest in the I think that Your Honor is correct, Judge Smith, in your likening this to the TT case. It was fundamentally different than the TT case. The TT case from Bellevue School District, which I believe Your Honor sat on that panel, and I believe that Mr. Girard was also the attorney on that matter, involved a student . . . Let me just interrupt you for a second because I understood you say that you also take the position there's no state protected interest, but if there was, would we have jurisdiction to adjudicate that? I would argue that you would not. I think not. If there's no federal violation . . . The reason we are here is because it was a 1983 action brought, and that's how we wound up in federal court, and that's the issue. I believe, Judge Bannon, that you're absolutely correct. That is why we're here before the court today, is to address these issues. It's what Judge Silley found. Judge Silley looked at this through the lens of the federal due process claims that were being presented, and found that on balance the hearing had been fair, that the student had been afforded a constitutionally sufficient hearing with due process afforded. One of the ironies, and perhaps the strangest legal quandary, I don't think I've ever been in a case where someone has asserted a confrontation right, where in fact there have been two hearings, both a lower hearing and an appeal hearing, neither of which involved the student. The student voluntarily did not attend either hearing, and now is asserting a confrontation violation, that he was not allowed to confront witnesses at hearings at which he never appeared. I find that strange, and a little bit of a legal quandary, that a defendant, or that a plaintiff rather, excuse me, would be allowed to make such an argument. The fact is that this was a case involving a large scale hazing or initiation type process. As the court pointed out, the record shows that it had gone on for years, and when the father of the student came to the hearing, the father made several arguments, none of which were about the witnesses, none of which were about whether there was credibility of the witnesses, except insofar as the father did ask were they coerced into making the statement. He took the statements, was there at the hearing, and was able to address that issue. The real issues that the father addressed were whether or not this act even constituted hazing under the district policies. That was the thrust of the argument. In fact, rather than denying, as in TT, that the student had even engaged in the behavior, the father even admitted on the record, and I know that the student contests whether that was actually an admission, but Judge Zille found that it was an admission. In fact, even the administrator at the hearing said that he was glad to hear the father at least concede that his son had been involved. The father asked that this be reduced to a school rule violation. He simply asked that the specific violation be changed, that it be called a school rule violation, that the reduction at the lower hearing, he asked that the suspension be reduced in time. Let me ask you something, Counselor. Yes. Is there a mechanism by which the student can seek to have his school record adjusted in such a way that the suspension will not appear so that when he applies for college it will not be a black mark in his future? There is a process. The student can certainly engage with the district and request that that be done at some point. The district was unwilling to do it. Remember, there were almost a dozen students charged in this incident. The district was unwilling to do it for one student and not do it for all. However, there is a process by which the student can come back to the district after a period of time and ask that that be removed. More importantly, the Family Educational Rights and Privacy Act actually allows a process for parents and students to come in and challenge their education records and have things removed that they believe should not be there. Whether or not that should be removed and whether or not that would inequitably treat some students versus other students who were also charged in the same type of incident with school discipline, that would be a decision that would have to be addressed in that type of form. I think on whole, the record reflects that the student in this case did not have a constitutionally protected property interest in the adherence to every procedure. I agree that it is a wedges analysis and that what we're really looking at is whether the hearing on balance provided constitutionally protected due process for the student. Judge Zille found that exactly. He pointed out that yes, there were some procedures that were not followed strictly, but on whole and on balance, he found that the hearing that was afforded the student . . . Remember, the student has had two opportunities for a hearing. The student was aware of the allegations. The student was notified of those allegations and the student was given an opportunity to be heard. When the student was heard, it was really the student's father. The father simply asked that the punishment be reduced, that the sanction be reduced, and that it be changed in its nature. It's a very nice day outside. I don't have any desire to talk any longer unless the court would like to hear anything more specifically. Otherwise, I'll certainly defer to Mr. Gerard to address the court. You frankly answered the questions I would have asked you, so I have no questions. Thank you. No questions. Mr. Gerard, if you would like to spend a minute on rebuttal? Mr. Gerard, I just have one question. In your view, is it . . . does a Washington procedural rule that has a mandatory language, does that then become constitutionally protected activity? It's not just my opinion. It was the opinion of the district court following remand and following the guidance of this court in T.T., where the district court concluded following this court's guidance that, in fact, the regulation about whether or not a school district was excused from providing witnesses at a school disciplinary hearing was severely restricted by the applicable regulations. That is, the school district had a mandatory duty to allow the student to confront and question witnesses, except in two exclusions. One, where the student had a genuine fear of retaliation, or two, the school district tried to get the student to come and was unable to do so. Here, the district provided absolutely no proof of that. The district court in T.T. found that that was a wedges and ledges violation. It's not . . . But the district court found that totally on its own based on that particular circumstance, right? Because there's nothing in my opinion, me being one of three, which suggested that that ought to be their finding. No, it said to go back and do further fact-finding on that specific issue. Because due process is a flexible concept, calls for procedural protections demanded by the particular factual situation, correct? Under a Federal analysis. Well, that's the analysis we gave, isn't it not? I was reading from T.T. Well, you also gave an analysis under the state scheme that sets . . . Well, no, we did not. We said you've got some state scheme, you've got it there in the record, you've got it there in front of you, and you've got some facts. And because Morrissey v. Brewer suggests what I just said, you've got to make a decision taking more evidence than having a hearing. Right. We gave no, absolutely no instruction to the district judge, other than they needed a hearing. As I understood, T.T., you said, and I will defer to your interpretation of it, since you probably wrote it . . . I'm not sure I wrote it, but it was there as it was written, and I know what it said, because I had something to do with what it said. Well, as I understood it, and as Judge Jones interpreted it, you were instructing him to do fact-finding, to find out certain things, and to apply the state law, if in fact the facts supported that application. Before I get thrown off the podium, I just want to address, Judge Smith, if you look at page 14 and 15 of our reply brief, you'll find the numerous citations to the father challenging the veracity of the students involved, and it's all the citations to the supplemental excerpts provided by the school district are set forth there. So there was a ton of information. The father didn't just go in and say, we want it reduced to 10 days. That was not what happened. The school district has pointed out . . . I just want to make two quick points. The school district has pointed out in their briefing that it was so unusual, so odd, that the student didn't appear at the hearing, and that the student didn't exercise his or her right to confront students. The regulations that have been on the books in Washington for 40 years, WAC 392, 400, 270, and 315, say the student and his parent or guardian have the right to confront and cross-examine the witnesses against the students. So why the district thinks this is so unusual after 40 years, I don't know. The last point I want to make is that the district, you will find in the district's briefing before this court, that they only rely on a federal analysis after they remove the case to this court, from state court, in the property interest involved in the 14th analysis, due process analysis. But in the district court, they said that the property interest that the student had was both under Article 9, Section 1 of the Washington Constitution, the paramount duty, and under the state statutory law. So here, they've scrupulously avoided noting the greater property interest of the student. Thank you. Thank you very much. The case of CR versus Seattle Public Schools will be submitted. We thank counsel for their argument.
judges: Bea, N.R. Smith, Hayes